IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TYRONE D. COLLICK            :          CIVIL ACTION
                              :
      v.                    :
                              :
JO ANNE B. BARNHART        :          NO. 06-1168
Commissioner of the           :
Social Security Administration    :

---

**REPORT AND RECOMMENDATION**

THOMAS J. RUETER                             January 3, 2007
United States Magistrate Judge

            Plaintiff, Tyrone D. Collick, filed this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying his claim for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("Act").  Plaintiff filed a request for review and reversal

of defendant's final administrative decision and a supporting brief (hereinafter "Pl.'s Br."), and

defendant filed a motion for summary judgment and a response to plaintiff's request.  For the

reasons set forth below, this court recommends that plaintiff's request be denied and the

Commissioner's motion for summary judgment be granted.

I.        **FACTUAL AND PROCEDURAL HISTORY**

               Plaintiff filed an application for DIB on July 19, 2001, maintaining that he has

been disabled since as least April 2, 2001.[1]  (R. 286-88.)  The claim was denied initially on

---

[1]       The Social Security Administration Regional Director's initial denial included a
review of plaintiff's assertion of an "inability to work because of bipolar disorder, substance
abuse, five suicide attempts, headaches, stomach aches, asymptomatic HIV+ and frequent
asthma."  (R. 254.)  Plaintiff's claim on appeal here, however, relates only to his mental
impairments, including an affective disorder and anxiety disorder.  Plaintiff also contends that
substance abuse is not a material factor contributing to his disability.  (Pl.'s Br. at 3.)

January 16, 2002, at which time the Regional Director found that plaintiff's condition did not

prevent him from working.  (R. 246-47, 254-56.)  Plaintiff filed a request for a hearing and

Administrative Law Judge ("ALJ") William J. Reddy convened a hearing on August 12, 2003.

The hearing was rescheduled in order to secure the services of a psychiatric medical expert

("ME").  (R. 1211-12.)  At the rescheduled hearing on December 4, 2003, plaintiff, represented

by counsel, appeared and testified, as did psychiatric ME Richard B. Saul, M.D., and vocational

expert ("VE") Steven H. Gumerman, Ph.D..  (R. 1213-52.)

       In a decision dated January 29, 2004, the ALJ denied plaintiff's claim, finding

plaintiff was not disabled within the meaning of the Act.  (R. 14-24.)  The ALJ made the

following findings:

1.    The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 404.1527).

7.    The claimant has the following residual functional capacity: no exertional limitation; limited to simple, routine unskilled work.

8.      The claimant is unable to perform any of his past relevant work (20 C.F.R. § 404.1565).

9.      The claimant is an "individual closely approaching advanced age" (20 C.F.R. § 404.1563).

10.     The claimant has "more than a high school (or high school equivalent) education" (20 C.F.R. § 404.1564).

11.     The claimant has no exertional limitations (20 C.F.R. § 404.1545).

12.     There are a significant number of jobs at all exertional levels that the claimant is capable of performing; given his age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled.

13.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(g)).

(R. 23-24.)

On January 20, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (R. 9-12.) The ALJ's decision became the final decision of the Commissioner. (R. 9.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a

preponderance of the evidence.  Jesurum, 48 F.3d at 117.  This court may not weigh evidence or substitute its own conclusions for those of the fact-finder.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993)).  As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for DIB, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment.  42 U.S.C. § 423(d)(5).  A claimant satisfies this burden by showing an inability to return to former work.  Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).  Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f).

4

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled." This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 404.1520.

III.  **BACKGROUND**

    A.  **Testimony of Plaintiff, December 4, 2003**

At the time of the hearing, plaintiff was fifty-two years old and resided with his seventy-one year old mother. (R. 1229, 1239.) Plaintiff received a military retirement income, having served in the military for approximately twenty-one years. (R. 1230, 1238.) Additionally, due to plaintiff's asthma, the Veterans' Administration ("VA") provided him with a ten percent disability payment of $104 per month. (R. 1230.) As of the hearing date, plaintiff was separated from his wife. (R. 1236.) He had been married five times, and has three children with whom he has a good relationship. Id. Plaintiff completed two and one-half years of college while in the military. (R. 1237.)

5

Plaintiff testified that he last worked in 2001,[2] serving as a financial relationship manager for Mellon Bank.  Id.  The employment lasted approximately one year and plaintiff admitted to abusing drugs and/or alcohol two to three times during that period.  Id.  In April 2001, plaintiff became severely depressed at work and began crying uncontrollably.  (R. 1238.)  He spent four or five months on short-term disability and never returned to work.  Id.

Plaintiff started abusing alcohol at age twenty-five and the longest period of time he ever remained sober was thirteen months.  (R. 1239-40.)  He recounted abusing alcohol while serving as a patriot missile company first sergeant in the military.  (R. 1238-39.)  Plaintiff claimed that he is still dealing with the issues that led him to alcohol abuse, primarily the abuse of his stepfather, stating that "[m]any times I thought the man was going to murder me."  (R. 1240.)  Plaintiff recalled the abuse started at age three, when he met his stepfather, and that physical abuse continued through age twelve and mental abuse continued until age twenty.  (R. 1244.)  Plaintiff testified that he thought about his stepfather and the abuse a "few times a week."  Id.

The ALJ asked plaintiff whether he felt any job exists that he would be able to do.  Plaintiff responded "not at the moment" due to a litany of prescribed medications that cause fatigue and limit his attention span.  (R. 1235-36.)  Plaintiff explained that his HIV medications make him anemic and his anti-anxiety medications make him "very tired."  (R. 1235.)  At that

---

[2]     Around October 2001, as part of an addiction recovery program through the VA, plaintiff spent one month working as an escort transporting patients around the clinic.  (R. 1229.)  He stated that he left the program because "they didn't want me to work there anyway.  They didn't want me there because the program is generally for people who do not have incomes and I had an income and I felt that was their way of getting rid of me by sending me on conflicting appointments."  (R. 1230.)

time, plaintiff's psychiatric medications included Venoflex for depression, Trazodone for bipolar disorder, Valprosic Acid or Depakote for mood, Olanzapine for auditory hallucinations, and Dehydroalanine and Gabapentin for anxiety.  (R. 1235-36.)  Plaintiff further indicated that his doctors instructed him to continue taking all of his medications because changing dosages could result in a return of "suicidal ideations" or "more extreme mood disorders."  (R. 1236.)

Plaintiff confirmed that he last used drugs or alcohol in the thirteen months prior to the hearing, in July 2003.  (R. 1230-31, 1241.)  Plaintiff admitted he left the VA drug and alcohol treatment program in July 2003 after a negative reaction from his counselor, after which plaintiff participated in a Narcotics Anonymous program and received psychiatric treatment once every two months from Dr. Hole.  (R. 1231-32.)

Plaintiff attributed his most recent episode of drug abuse in July 2003 to anxiety, depression and sadness.  (R. 1241.)  With respect to his depression, plaintiff claimed that within the last thirteen months his symptoms fluctuated and during some periods he still experienced auditory hallucinations of his stepfather's voice telling him he was "no good, a failure, that I should kill myself."  (R. 1242.)  Plaintiff related that he does not hear the voices when he uses drugs or alcohol.  (R. 1243.)  Plaintiff further testified that he had tried to commit suicide three times, most recently in 2001.  (R. 1242.)  Plaintiff explained that on "bad days," he stayed home and did not engage in any social activities, describing himself as self-isolating, easily aggravated, and losing interest "in just about anything."  (R. 1243.)  Plaintiff indicated that "bad days" occurred one to four times a week, and continued to occur even when he abstained from drugs or alcohol for months at a time.  (R. 1243-44.)

Plaintiff testified that he had last seen his psychiatrist three months prior to the hearing and was waiting for the VA to assign him a psychotherapist.  (R. 1244-45.)  When the ALJ asked plaintiff what his average day entails, plaintiff responded that it is difficult for him to get up in the morning because of the medications he takes at night.  (R. 1245.)  Plaintiff stated that he reads or watches television, but it is hard for him to maintain concentration or be in social situations because his interpersonal relationships have been strained.  Id.  When the ALJ pointed out that plaintiff worked in a social environment for a number of years, plaintiff responded that abusing alcohol masked those problems.  Id.  Finally, plaintiff did agree that if he felt capable of working, he would be employed.  (R. 1246.)

**B.**     **Testimony of VE Steven Gumerman, Ph.D., December 4, 2003**

At the administrative hearing, VE Steven Gumerman, Ph.D., testified that plaintiff's past relevant work as a financial planner and advisor would be classified as a sedentary, skilled occupation.  (R. 1246-47.)  The VE also noted, and plaintiff confirmed, that from 1992 to 1998, plaintiff's work included sales of insurance and investments for his own firm. (R. 1247.)  The VE classified that work as light exertion, but still a skilled occupation similar to his position with Mellon Bank.  Id.

The ALJ posed two hypotheticals to the VE.  First, the ALJ asked if an individual "is limited to just simple routine unskilled tasks, would it have any affect [sic] on your opinion regarding the trained skilled occupational base at any exertion level."  Id.  The VE answered negatively.  (R. 1247-48.)  Second, the ALJ instructed the VE to assume plaintiff's testimony was fully credible, except to disregard plaintiff's response as to whether he could work, and then inquired as to whether there would there be any occupations such a person could perform.  (R.

8

1248.)  The VE again answered no, citing plaintiff's need to isolate himself from people and the side effects of the medications, specifically including "sleeping, social limitations, lethargy, and a limited attention span."  Id.

     **C.**     **Testimony of ME Richard B. Saul, M.D., December 4, 2003**

     In Dr. Saul's expert opinion, plaintiff's substance abuse constituted a significant contributing factor to plaintiff's impairments, and in the absence of such abuse, plaintiff is not disabled.  (R. 1220-23.)  Dr. Saul reviewed plaintiff's medical records and testified that plaintiff's restrictions upon his activities of daily living were moderate.  (R. 1217-21.)  Dr. Saul noted plaintiff had experienced more than four episodes of decompensation, and determined that plaintiff had moderate difficulties in maintaining social function, and marked difficulties of maintaining concentration, persistence or pace.  (R. 1221-22.)  When factoring out the affects of drug use, however, Dr. Saul opined that plaintiff would not meet any "B" or "C" criteria, explaining that plaintiff's restrictions upon his daily activities were mild, social functioning and maintaining concentration, persistence or pace were moderate, and plaintiff experienced no

repeated episodes of decompensation.[3]  (R. 1221-22.)  Dr. Saul confirmed that these limitations

would permit an individual to perform simple, routine, unskilled work.  Id.

In offering his expert opinion, Dr. Saul explained he could separate plaintiff's

drug and alcohol use from other impairments based on his experience dealing with drug addicted

people.  (R. 1223.)  If plaintiff did not abuse drugs or alcohol, according to Dr. Saul, he would be

able to engage in some type of work activity.  Id.  When asked whether his opinion would change

if plaintiff did not abuse drugs or alcohol for one year, Dr. Saul indicated it would not, stating

further that one year is not long enough since "it takes a year before a person even adjust[s] his

life back to some kind of normalcy after stopping using drugs."  (R. 1223-24.)  Plaintiff's

attorney queried Dr. Saul that if, hypothetically, plaintiff had been drug and alcohol free for one

year, whether his opinion would change.  Dr. Saul responded "if I saw toward the end of that year

that he was mentally ill, that would have some impact on my thinking . . . if he was so disturbed

---

[3]        The ME considered whether plaintiff met the "B" and "C" criteria under Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders).  (R. 1221-22.)  In order to satisfy the "B" criteria under Listings 12.04 and 12.06, the claimant must show that his impairment resulted in at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404, Subpart P, App. 1, 12.04(B) and 12.06(B).  In order to satisfy the "C" criteria under Listing 12.04, the claimant must show a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation on the claimant's ability to perform basic work activities and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or (3) history of one or more years' inability to function outside a highly supportive living arrangement.  20 C.F.R. Pt. 404, Subpart P, App. 1, 12.04(C).  Listing 12.06(C) is satisfied if the claimant can show that his impairment resulted in complete inability to function independently outside the area of one's home.  20 C.F.R. Pt. 404, Subpart P, App. 1, 12.06(C).  The ME also considered Listing 12.09 (Substance Addictive Disorders).  (R. 1221-22.)

that he could not work at that time, that would influence my opinion." (R. 1224.) Referencing a record "replete with substance abuse and alcohol," Dr. Saul emphasized that plaintiff abused drugs less than five months before the administrative hearing and stated "at this particular time, I could not change any opinion in terms of drugs being a significant contributing factor." (R. 1225.) Dr. Saul also noted that depression, schizophrenia, bipolar disorder, and mood swings are all diagnoses commonly associated with substance abusers due to the behaviors that drugs stimulate. (R. 1226.)

> D.    **Medical Evidence (Evidence of Psychiatric and Addiction Disorders)**

Since plaintiff's alleged onset date of April 2001, he has been hospitalized numerous times. Plaintiff's medical records of May 21, 2001, show he lost 101 pounds over several months due to depression and lack of funds. (R. 501.) In June 2001, plaintiff entered a VA hospital with complaints of depressed mood, stating he almost jumped off a bridge earlier in the night. (R. 394.) Treating physician Dr. Louis Littman noted plaintiff had cocaine dependence, drank a forty-ounce beer on the day of admission, and his mood was depressed upon admission. (R. 394-95.) Plaintiff entered the VA addiction recovery program for several weeks for substance-induced mood disorder, cocaine and alcohol dependence, and treatment of HIV. (R. 395-96.) In September 2001, plaintiff was admitted to the VA hospital through the emergency room because of depression, suicidal ideation, and cocaine and alcohol abuse. (R. 390.) The examining physician, Dr. Vasant Dhopesh, found plaintiff alert and oriented, with no active suicidal or homicidal ideations, and no auditory or visual hallucinations, though his mood was depressed. (R. 391.) Plaintiff remained in the addiction recovery unit for approximately one month, receiving diagnoses of substance abuse, depression, HIV positive, and asthma. (R. 668.)

11

Over that month, plaintiff's Global Assessment of Functioning ("GAF") score increased from fifty-two to fifty-nine.[4]  Id.

The record contains ample documentation of plaintiff's in-patient and out-patient rehabilitation during the fall of 2001.  (R. 649-781.)  Social workers, counselors and therapists charted plaintiff's progress, finding him motivated for change but ineffective at coping.  (R. 780.) Plaintiff's intake forms indicated he continues to struggle with the past physical and emotional abuse of his stepfather, and had attempted suicide.  (R. 772.)  Over the course of his rehabilitation, various authorities described him as attentive, engaging and interactive in group therapy, and comprehending the plethora of educational and vocational classes he attended.  (R. 679, 688, 693-99, 704-13.)  Plaintiff shared his daily journal in therapy sessions, evinced an understanding of relapse prevention, and demonstrated commitment to the goals of twelve-step recovery.  (R. 715-26, 736-46.)  Plaintiff was discharged as competent and employable.  (R. 669.)

After his discharge from the VA rehabilitation unit, plaintiff worked as an escort at the VA facility as part of an outpatient work therapy program.  (R. 651-52.)  After working sixty-five hours over nine days, plaintiff's performance evaluation demonstrated fully to highly successful performance.  (R. 651.)  The narrative evaluation completed by therapist assistant Julio Cintron stated that plaintiff "works well with staff . . . [and] exhibited good motivation, attitude, cooperatave [sic], and interpersonal skills."  (R. 652.)  A case management note dated

---

[4]     The Global Assessment of Functioning Scale is a tool used to report a clinician's judgment of an individual's overall level of functioning and can be used to track the clinical progress of an individual in global terms, using a single measure.  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32.  A GAF of fifty-two to fifty-nine indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) and/or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  Id. at 34.

December 11, 2001, from a VA vocational rehabilitation specialist, recounts that plaintiff "liked working in escort but felt that he had been treated disrespectfully by the escort staff and felt that he could not [sic] longer work in that area. [Plaintiff] indicated that he has adequate income to live on until he finds a job and felt that finding a job would not be a problem." (R. 828.) The next note entry, however, dated December 12, 2001, states that plaintiff was discharged from escorting patients due to "loud and abusive language, not picking up a patient, and generally refusing to complete assigned tasks." (R. 827.) Subsequent entries confirm that plaintiff initiated the discharge and also communicated to a rehabilitation specialist that he "could easily obtain work, should he choose to." (R. 826-27.)

Disability Determination Service ("DDS") consultant John Gavazzi, Psy.D., assessed plaintiff's impairments and concluded that the medical evidence did not establish the presence of "C" criteria. (R. 782-98, 793.) In assessing plaintiff's functional capacity, Dr. Gavazzi referenced the discharge summary dictated by Dr. Rashid on October 1, 2001, which stated that plaintiff was "discharged as employable." (R. 668-70, 798.) In considering plaintiff's affective disorders and substance addiction disorders, Dr. Gavazzi noted that plaintiff's "primary difficulties appear to stem from substance abuse." (R. 782, 798.) Dr. Gavazzi found plaintiff's only impairments to be moderate limitations on his ability to understand, remember and carry out detailed instructions. (R. 796-97.)

Plaintiff continued to participate in weekly outpatient services and addiction recovery meetings from November 2001 through February 2002. (R. 814-33.) Vocational therapist records of February 2002 indicate that plaintiff worked in a print shop and greenhouse for several days as part of his therapy, but then decided to seek employment outside of the VA

programs.  (R. 816-20.)  Plaintiff was discharged from the vocational rehabilitation program in February 2002.  (R. 816.)

Plaintiff went to the VA clinic as a walk-in patient on August 28, 2002, seeking follow-up outpatient psychiatric care.  (R. 1005.)  On September 24, 2002, Richard W. Hole, Jr., M.D. conducted a mental health examination of plaintiff.  (R. 1010.)  Plaintiff reported bouts of depression during crises, suicidal ideations, and "up" periods during which he had racing thoughts, fast speech, decreased sleep, and increased spending.  Id.  Plaintiff recounted that his stepfather's abuse "bordered on murder."  Id.  He also reported drinking alcohol once and smoking cocaine twice in the past year.  Id.  Dr. Hole diagnosed plaintiff as "[b]ipolar I most likely . . . [b]ipolar II also possible" and suffering from "mood disorder not likely to be caused by a general medical condition or substance, given lack of underlying medical conditions and cessation of alcohol and cocaine one year ago."  (R. 1013.)

The next chronological grouping of VA medical notes begin in December 2002 when plaintiff was referred for treatment of crack cocaine and alcohol dependency.  (R. 842-93.)  Plaintiff's psychiatric history included bipolar disorder and suicide attempts, but at that time he denied having auditory or visual hallucinations.  (R. 842, 852.)  The notes indicate that plaintiff exhibits the full range of signs and symptoms of post-traumatic stress disorder ("PTSD"), which has been attributed to childhood abuse by his stepfather.  (R. 844-45.)  He reported his last use of alcohol and drugs was in November 2002, during which time he drank a forty-ounce beer and smoked $1,000 worth of crack cocaine over three days.  (R. 856.)

In December 2002, plaintiff was admitted to the Veterans' Affairs Medical Center ("VAMC") addiction recovery unit for three weeks and participated in group therapy and

education classes.  (R. 842-917.)  Plaintiff engaged in one-on-one therapy with a VA psychiatrist, complaining of depression, nightmares, flashbacks, and auditory hallucinations of his stepfather's voice telling him "I told you, you are crazy" or "you are no good."  (R. 898.)  He displayed increased anxiety after his name was mistakenly listed on a health report with a first name that belonged to his stepfather, causing him to become paranoid.  (R. 902-04.)  The discharge summary reports plaintiff's GAF score at admission was thirty-two, at discharge was forty, and at the highest point in the preceding twelve months was fifty-three.[5]  (R. 919.)  Plaintiff continued to attend outpatient therapy for the remainder of January 2003.  (R. 919-31.)

   E.G. Bustonera, M.D. completed a psychiatric review of plaintiff, assessing the period from December 12, 2002 to February 14, 2003.  (R. 946-59.)  Dr. Bustonera did not indicate a medical disposition for plaintiff.  (R. 946.)  The doctor marked boxes indicating the presence of the following features: memory impairment, perceptual and mood disturbances, delusions or hallucinations, a host of depressive symptoms, generalized persistent anxiety, seclusiveness, and intense and unstable interpersonal relationships and impulsive and damaging behavior.  (R. 947-53.)  Dr. Bustonera also marked that plaintiff's substance abuse disorder presented behavior changes most like that of an anxiety-related disorder.  (R. 954.)  Dr. Bustonera rated plaintiff's functional limitations as follows: restriction of daily living activities - none; difficulties in maintaining social functioning - marked; difficulties in maintaining concentration, persistence or pace - extreme; repeated episodes of decompensation - four or

---

[5]  A GAF score of thirty-two to forty indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work).  DSM-IV, at 34.

15

more.  (R. 956.)  Finally, Dr. Bustonera checked the box finding plaintiff met "C" criteria, but offered no explanatory or narrative to support the conclusion.  (R. 957-58.)

The record contained several progress notes during the middle of 2003 relating to plaintiff's mental health status.  (R. 1017-18.)  On May 23, 2003, Dr. Hole reported that on this second visit, plaintiff had been "sober since his discharge from the CVAH dom [sic] program one month ago but he is getting more depressed."  (R. 1018.)  Having diagnosed plaintiff as suffering from schizoaffective schizophrenia, Dr. Hole adjusted plaintiff's medications to address the "disturbing, negative voices" heard by plaintiff.  Id.  On June 11, 2003, Dr. Hole found plaintiff "feeling better" since switching medications, getting more sleep and was "not quite as troubled with the voices."  (R. 1023.)

On June 25, 2003, plaintiff sought a second admission to the addiction recovery unit at the VAMC and underwent an intake assessment performed by Wayne Barber, M.D.  (R. 1025-27.)  The intake assessment reflected that plaintiff's longest period without drugs or alcohol was one year ending September 2002, and that as of the date of intake, plaintiff had been free from drugs and alcohol for almost seven months.  (R. 1025.)  The assessment records indicated plaintiff was diagnosed with cocaine dependence in sustained early remission, alcohol abuse in sustained early remission, bipolar disorder vs. schizoaffective disorder, tobacco use disorder, HIV, and asthma.  (R. 1026.)  His treatment plan included group recovery sessions and an ongoing medication regimen monitored by Dr. Hole.  (R. 1027.)

According to the progress notes during July 2003, plaintiff participated inconsistently in outpatient recovery and engaged in substance abuse.  (R. 1182-92.)  In early July 2003, plaintiff failed to appear for group therapy on three separate occasions.  (R. 1182.)

Plaintiff had participated in a group session on July 21, 2003, managed by therapist James Mock, who noted that plaintiff appeared to be struggling with his recovery.  (R. 1186.)  A progress note dated July 23, 2003, authored by Mr. Mock, indicates that plaintiff's last acknowledged use of cocaine and alcohol occurred on July 19, 2003.  (R. 1191.)  Plaintiff resumed a pattern of failing to appear for group therapy for the remainder of July 2003.  (R. 1192.)

Plaintiff maintained contact with Dr. Hole, who continued to monitor plaintiff's medications.  A follow-up visit with Dr. Hole on August 20, 2003, indicated that plaintiff continued to feel depressed and experience difficulty sleeping.  (R. 1193.)  Dr. Hole adjusted plaintiff's medications accordingly.  Id.  Dr. Hole noted that plaintiff's GAF score in June 2003 was fifty-five, indicating only moderate symptoms.

Dr. Hole responded to interrogatories regarding plaintiff's progress on December 9, 2003.  (R. 1203-04.)  Dr. Hole indicated that he began treating plaintiff on October 16, 2002, having diagnosed plaintiff with bipolar illness.  (R. 1203.)  When responding to the yes-or-no statement "[c]onsidering solely Mr. Collick's psychiatric impairments **other than drug and/or alcohol abuse**, in your opinion is Mr. Collick capable of sustaining simple repetitive work involving 1-2 step tasks, 8 hours per day, 5 days per week," Dr. Hole checked "no."  Id. (emphasis in original).  By way of explanation, Dr. Hole wrote that plaintiff "had been sober for the calendar year 2003 and still requires effexor, olanzapine, hydroxyzine and valproic acid to sleep and have any minimal sense of well being.  Even with these meds, he is chronically depressed."  Id.

**IV.** **DISCUSSION**

_____Plaintiff argues that substantial evidence does not support the ALJ's decision that

plaintiff is not disabled. (Pl.'s Br. at 7.) Specifically, plaintiff contests the ALJ's finding that

plaintiff's substance abuse is a substantial contributing factor in his disability, and that absent

active substance abuse, plaintiff would not be disabled. (R. 19; Pl.'s Br. at 7-9.) Plaintiff also

contends that the ALJ erred in rejecting the opinion of plaintiff's treating psychiatrist, Dr. Hole.

(Pl.'s Br. at 9-15.) Finally, plaintiff avers that the ALJ's credibility finding is not supported by

substantial evidence. Id. at 15-18.

      **A.** **Substance Abuse as a Substantial Contributing Factor**

         Plaintiff maintains that the ALJ erred in finding that absent substance abuse,

plaintiff would not be disabled. (R. 19-20; Pl. Br. at 7.) In the case of an individual who suffers

from alcoholism or drug addiction, the Act requires that "[a]n individual shall not be considered

to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this

subchapter) be a contributing factor material to the Commissioner's determination that the

individual is disabled." 42 U.S.C. § 423(d)(2)(c). The applicable regulations provide that where

plaintiff has been found disabled and has documented medical evidence of a substance addiction,

the key factor in the ALJ's determination of whether the addiction is a contributing factor is

whether plaintiff would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. §

404.1535(b)(1). If plaintiff's remaining limitations absent drug and alcohol usage would not be

disabling, then the ALJ will find plaintiff's addiction to be a contributing factor material to the determination of disability.  20 C.F.R. § 404.1535(b)(2)(I).[6]

In the present case, the ALJ properly assessed whether plaintiff's impairments meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4, specifically Listings 12.09 (substance addiction disorders), 12.06 (anxiety-related disorders), and 12.04 (affective disorders).  The ALJ found that "given the claimant's substance abuse disorder, his mental condition satisfies the requirements of Listed Impairment 12.09B-C [sic]."  (R. 19.) The ALJ credited the testimony and expert opinion of Dr. Saul that, absent substance abuse, plaintiff's limitations "would be mild as to activities of daily living and social functioning and moderate as to concentration, persistence, and pace, with no episodes of decompensation" and therefore would not satisfy the "C" criteria.  (R. 20, 1222.)  The ALJ noted that Dr. Hole's interrogatory answers partially contradicted Dr. Saul's opinion.  He also pointed out, however, that Dr. Bustonera's assessment of plaintiff's limitations was consistent with Dr. Saul's opinion. (R. 21.)  Since plaintiff had engaged in heavy substance abuse for a significant period prior to meeting with Dr. Bustonera, the ALJ concluded that Dr. Bustonera's findings undoubtedly included the effects of substance abuse disorder and were therefore consistent with the testimony

---

[6]     Plaintiff argues that 20 C.F.R. § 404.1535(a) requires the ALJ to make a finding as to "whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."  (Pl.'s Br. at 7-8.)  Plaintiff contends that the ALJ failed to apply this standard when he altered this wording and concluded that plaintiff's "substance abuse is a substantial contributing factor in his disability."  (R. 19.)  The regulations further explain that the "key factor" in making this determination is "whether we would still find you disabled if you stopped using drugs and alcohol."  20 C.F.R. § 404.1535(b).  The ALJ clearly stated in his decision that "absent active substance abuse, the claimant would not be disabled."  (R. 19.)  The ALJ properly applied the standard in determining that plaintiff would not be disabled absent substance abuse.

of Dr. Saul.  (R. 21.)  Finally, the ALJ credited Dr. Gavazzi's December 26, 2001 opinion as

consistent with Dr. Saul's findings that plaintiff had been, at that time, "mildly limited in

activities of daily living and social functioning, and moderately limited in concentration,

persistence, and pace, with one or two episodes of decompensation and no "C" criteria present."

(R. 21, 796-98.)  Dr. Gavazzi had noted his consideration of plaintiff's history of substance abuse

and depression, as well as plaintiff's ongoing participation in recovery programs, in rendering his

opinion.  (R. 21, 798.)

   Thus, in consideration of all of this evidence, the ALJ concluded that "absent

active substance abuse . . . the claimant's condition would not satisfy the "B" or "C" criteria of

any mental Listed Impairment."  (R. 19.)  The ALJ further recounted plaintiff's testimony

regarding his drug and alcohol abuse, auditory hallucinations, self-imposed isolation, and suicide

attempts, determining that "absent active substance abuse, the claimant would have substance

abuse disorder, major depressive disorder, and anxiety disorder, impairments that would be

severe within the meaning of the Regulations but not severe enough to meet or medically equal

one of the impairments listed in Appendix, Subpart P, Regulations [sic] No. 4."  (R. 20.)

Substantial evidence supports the ALJ's conclusion that absent plaintiff's substance abuse, he

would not be disabled.

  **B.**  **Opinion of Treating Psychiatrist**

   Plaintiff asserts that the ALJ erred in rejecting the opinion of treating psychiatrist

Dr. Hole who opined that plaintiff's psychiatric impairments, absent drug and alcohol abuse,

would prevent him from working on a full-time basis.  (Pl.'s Br. at 9-15.)  Specifically, plaintiff

argues that the ALJ failed to explain what "objective medical evidence" he found contrary to Dr.

Hole's testimony**,** erroneously attributed the report of another physician to Dr. Hole,[7] and failed to recontact Dr. Hole to test his opinion against that of ME Dr. Saul.  (Pl.'s Br. at 10-15.)

A treating physician's opinion is entitled to controlling weight if it is consistent with the other substantial evidence in the record and is supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1527(d)(2).  If substantial evidence in the record supports a contrary conclusion, however, the ALJ may reject the treating physician's findings but must set forth his or her reasons for doing so in the decision.  Id.; Frankenfeld v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).  "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)); Thomas v. Barnhart, 2003 WL 21419154, at *5 (E.D. Pa. June 11, 2003).  When rejecting a treating physician's opinion, "an ALJ may not make speculative inferences from medical reports," and may reject the opinion "outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotes and citations omitted); see also Plummer, 186 F.3d at 429.

In addition, the Third Circuit acknowledged that "greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a

---

[7]     Plaintiff contends that the ALJ erroneously attributed a June 25, 2003 psychiatric evaluation to Dr. Hole when, in fact, it was performed by Dr. Barber.  (Pl.'s Br. at 12 (citing R. 1027).)  The evaluation indicates that plaintiff was referred to Dr. Barber by Dr. Hole.  Dr. Hole received a copy of the evaluation.  (R. 1027.)  The content of the evaluation does not change depending upon the author.  The ALJ's error is harmless.

consultant . . . [,] a statement by a plaintiff's treating physician that she is 'disabled' or 'unable to work' is not dispositive." Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994). Rather, "the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." Id. at 48; see Morales, 225 F.3d at 317 (explaining that the ALJ can choose whom to credit but cannot reject evidence for no reason or for the wrong reason). The Third Circuit has stated, "where there is conflicting probative evidence in the record, [there is] a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and [the court] will vacate or remand a case where such an explanation is not provided." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

The ALJ discussed Dr. Hole's assessment of plaintiff's condition in detail in his decision. (R. 20-21.) The ALJ stated in part as follows:

> Dr. Saul's opinion is partially contradicted by that of treating psychiatrist Richard W. Hole, Jr., M.D., who opined on December 9, 2003 that even absent substance abuse, the claimant has a bipolar illness that would render him incapable of sustaining simple repetitive work involving 1-2 step tasks, 8 hours per day, 5 days per week. (Exh. 22F1). Dr. Hole's entire rationale is as follows:
>
>> Patient has been sober for calendar year 2003 and still requires Effexor, olanzapine, hydroxyzine and valproic acid to sleep and have any minimal sense of well being. Even with these medications, he is chronically depressed.
>
> . . .
>
> Dr. Hole's statement that the claimant was sober throughout 2003 is not accurate. On June 25, 2003, the claimant reported having engaged in a single casual episode of cannabis abuse two weeks prior (Exh. 12F62). He also admitted chemical use within the past four days on July 21, 2003 (Exh. 21F5).

(R. 20.)

The ALJ accurately pointed out that the very basis of Dr. Hole's opinion, that plaintiff had been sober for calendar year 2003, was false. Id. Plaintiff had episodes of

substance abuse in June and July 2003.  <u>See</u> R. 1191.  Plaintiff attempts to downplay the

significance of his substance abuse in 2003 by arguing that his "use" during this time "could be

deemed sufficiently insignificant within the context of treatment such that in Dr. Hole's opinion,

plaintiff, in effect, had been 'sober for the calendar year 2003.'"  (Pl.'s Br. at 11.)  Plaintiff points

to no evidence in the record to support his notion that he remained sober despite twice engaging

in substance abuse.  The ALJ properly discounted Dr. Hole's opinion because it was based upon

the inaccurate statement that plaintiff had been sober for calendar year 2003.[8]

   Apart from the progress notes provided in the record, Dr. Hole's opinion of

plaintiff's status consisted of answers to a six-question set of interrogatories illustrating only that

Dr. Hole practiced psychiatry, began treating plaintiff approximately fourteen months prior to the

hearing, diagnosed plaintiff with bipolar illness, and found plaintiff unable to work.  (R. 1203.)

A general, unsubstantiated conclusion of plaintiff's inability to work is not a medical opinion,

and the ALJ may discredit such judgments from a physician.  <u>See</u> <u>Fouch v. Barnhart</u>, 80 Fed.

Appx. 181, 185 (3d Cir. 2003) (non-precedential).  Moreover, Dr. Hole's check-box answer of

"no" to the question of whether plaintiff could work based solely upon his psychiatric

impairments is neither well-explained nor dispositive medical evidence.  (R. 1203.)  "Form

---

[8]  Plaintiff urges that the ME should have been recalled to consider whether Dr. Hole's opinion that plaintiff was disabled would have impacted his decision.  However, since the ALJ properly discounted Dr. Hole's opinion because it was based on an inaccuracy, recalling the ME to consider this flawed opinion would have been unnecessary.  Additionally, the ME testified that his opinion about plaintiff not being disabled absent substance abuse would not change if plaintiff did not engage in substance abuse for one year.  (R. 1223-24.)  The ME explained that one year of sobriety is not sufficient since it takes a year before a person can return to some kind of normalcy.  <u>Id.</u>

reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

The ALJ also correctly noted that the determination of whether plaintiff is disabled is reserved to the ALJ. (R. 20.) Dr. Hole's opinion that plaintiff is disabled is not controlling. See 20 C.F.R. § 404.1527(e)(1). The ALJ accurately stated that Dr. Hole's conclusion that plaintiff is disabled is "not supported by the objective medical evidence or the balance of the record." (R. 20.) The ALJ's evaluation of the evidence reflects specific consideration of the opinions and reports of numerous professionals. (R. 19-21.) Dr. Hole's conclusion that plaintiff is disabled is inconsistent with other evidence in the record. Dr. Barber, at the referral of Dr. Hole, evaluated plaintiff on June 25, 2003 and reported fairly benign findings. (R. 21, 1026.) Dr. Bustonera's reports of February 2003 are check-box analyses lacking any explanation for his assessment of plaintiff. However, as explained by the ALJ, Dr. Bustonera's findings can be reconciled with Dr. Saul's opinion as to the effect of plaintiff's substance abuse on his mental impairment. (R. 21, 946-59.) Dr. Gavazzi's report did include a narrative explanation of the functional capacity assessment, findings which directly support Dr. Saul's opinion that plaintiff's mental impairments are not severe. (R. 798.) Therefore, this court finds that substantial evidence supports the ALJ's conclusion that absent substance abuse, plaintiff is not disabled.

Contrary to plaintiff's claim, the ALJ was not required to recontact Dr. Hole to "clarify" his opinion. The regulations explain that when the ALJ receives medical information that is inadequate to render a determination whether plaintiff is disabled, the ALJ will seek out additional information to reach a decision. 20 C.F.R. §§ 404.1512(e), 404.1527(c)(3). In this

24

case, the ALJ had adequate information from the record and testifying experts, such that he was able to reach a decision on the issue of plaintiff's disability.  The ALJ did not find Dr. Hole's opinion to be unclear, but rather contradictory and unsupported by medical opinions and other evidence of record, including other psychiatric assessments and evaluative notes.  (R. 20-22.) The ALJ evaluated and weighed the medical evidence of record with testimony provided at the hearing, and provided reasons, including reliance on other physicians' assessments of plaintiff, for not affording controlling weight to Dr. Hole's opinion.  (R. 20-21.)  Discounting Dr. Hole's opinion falls squarely within the ALJ's discretion, and the court finds the ALJ's conclusion was supported by substantial evidence in the record.  See 20 C.F.R. § 404.1527(c)(2).

### C.      Assessment of Plaintiff's Credibility

Finally, plaintiff contends that the ALJ's finding that plaintiff's allegations regarding his limitations are not totally credible is not supported by substantial evidence.  (Pl.'s Br. at 15-18.)  The ALJ is directed by 20 C.F.R. § 404.1529 to engage in a two-step process when considering plaintiff's subjective complaints.  In general, section 404.1529(a) provides that "[i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  The regulations caution, however, that

> statements about your pain and other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain and other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), which would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a).  Social Security Ruling 96-7p further directs that in "determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."  "Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he . . . must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work."  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

It is within the province of the ALJ to evaluate the credibility of a claimant.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  An ALJ's "findings on the credibility of claimants 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'"  Irelan v. Barnhart, 243 F Supp. 2d 268, 284 (E.D. Pa. 2003) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)).  An ALJ may disregard subjective complaints when contrary evidence exists in the record.  Mason, 994 F.2d at 1067-68.  The ALJ must, however, provide his or her reasons for doing so.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000); Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990) (noting that ALJ may reject claim of disabling pain where he has considered subjective complaints and specified reasons for rejecting claim).

In the instant matter, the ALJ emphasized that he considered all of the evidence of record in reaching his decision.  (R. 17.)  The ALJ also specifically noted that he adhered to the

requirements of, <u>inter alia</u>, SSR 96-7p.  (R. 19.)  After a detailed review of the medical evidence

in the record and plaintiff's testimony (R. 18-21), the ALJ concluded as follows:

> Regarding credibility, the claimant was consistently employed through 1996, but
> has been underemployed/unemployed since that time (Exh. 5D2).  His allegation
> of inability to perform simple, routine work is contradicted by his written
> statements of October 15, 2001 that he is able to start and complete projects or
> activities and to plan each day, and that he has not [sic] trouble understanding
> instructions and carrying them out (Exh. 1E32).  His additional statements of past
> difficulty in fulfilling job duties support only his inability to perform his past
> relevant (skilled) work (Exh. 1E30-31).

(R. 21-22.)

Moreover, the ALJ noted that plaintiff "stated that his only abuse of drugs and

alcohol in the last 13 months occurred in July 2003."  (R. 19.)  However, the ALJ accurately

stated that plaintiff reported cannabis use in June 2003 and chemical use in July 2003.  (R. 20.)

As discussed by the ALJ, plaintiff claimed that he could not perform even simple,

routine work.  (R. 21.)  Yet in October 2001, when plaintiff applied for benefits, plaintiff

reported that he could start and complete projects, and understand and carry out instructions.  (R.

21, 302.)  Plaintiff's work as an escort as part of his VA recovery program also undermines his

claim that he cannot work.  The ALJ discussed this employment in the decision.  (R. 19.)  In

October 2001, Dr. Rashid opined that plaintiff was "employable."  (R. 669, 798.)  In November

2001, Francis J. Melan, a VA rehabilitation specialist, opined that plaintiff was "employable."

(R. 832.)  On December 12, 2001, plaintiff was discharged from the escort position because of

"[l]oud and abusive language, not picking-up a patient, and generally refusing to complete

assigned tasks."  (R. 827.)  The next day he reported that he quit the job because he did not want

to "put up with others' attitudes."  <u>Id.</u>  He was offered placement elsewhere but he refused saying

that "he could live on his retirement and could easily obtain work, should he choose to. [He] . . .

expressed an interest in finishing his education at HACC." Id.  On February 13, 2002, the

records from VMAC revealed that plaintiff "had completed his VRU evolvement [sic] and has

secured employment."  (R. 815-16.)  The ALJ addressed these records in his decision and noted

that they "implied an assumption of employability."  (R. 21.)  All of these factors, appropriately

considered by the ALJ in his decision, undermine plaintiff's testimony that he cannot work.

　　　　Plaintiff also claimed that his depression and side-effects from medication, not his

substance abuse, prevented him from working.  (Pl.'s Br. at 17.)  The ALJ discussed plaintiff's

depression in his decision.  (R. 18-21.)  Plaintiff's claim of disabling depression is belied by his

testimony that he only saw Dr. Hole once every two months and did not have a therapist at the

VA at the time of the hearing.  (R. 19-20, 1243-45.)  These are appropriate matters for the ALJ to

consider when determining plaintiff's credibility.  (R. 19-20.)[9]

　　　　Plaintiff contends that the ALJ failed to discuss plaintiff's complaints about side-

effects from his medications.  (Pl.'s Br. at 17.)  Contrary to plaintiff's assertion, the ALJ

discussed plaintiff's complaints of medication side-effects in his decision and stated as follows:

> Regarding his HIV infection, the claimant testified that the necessary medications
> cause him to be anemic, resulting in tiredness.  The medical evidence does not
> support this allegation.  At the Veteran's Administration Medical Center on July
> 17, 2003, the claimant's CD4 remained elevated and his VL undetectable (Exh.
> 21F4).  There was no thrush, and the claimant felt fine except for eating too much.
> On October 8, 2003, the claimant complained about his appetite but not about
> fatigue (Exh. 21F14).  On November 19, 2003, response to treatment was termed
> "excellent" (Exh. 21F19).

---

　　　[9]　　SSR 96-7p directs an ALJ, when determining the credibility of a claimant, to
consider a number of factors including: the type, dosage, effectiveness and adverse effects of
medication, treatment other than medication, and any measures other than treatment the claimant
uses to relieve symptoms.

(R. 19.)  See also R. 19 (ALJ noted plaintiff's complaints he was "tired, has poor attention, doesn't do well socially, and sleeps a lot").  The ALJ also noted that plaintiff complained to Dr. Hole, not of fatigue, but of an inability to sleep.  (R. 20.)  In May 2003, Dr. Hole adjusted plaintiff's medications to "allow sleep."  Id.  Dr. Hole reported that as of June 11, 2003, plaintiff "felt better, [and] was getting six hours' sleep."  Id.

Plaintiff fails to cite to any reference in the record that demonstrates that he suffered any functional limitations as a result of side-effects from his medications.  The Third Circuit Court of Appeals has indicated that side-effects often accompany "the taking of medication, and [they] should not be viewed as disabling unless the record references serious functional limitations."  Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002).  In the case at bar, no medical opinion in the record indicates that plaintiff suffered serious functional limitations as a result of the side-effects of his medication.  Accordingly, the ALJ properly considered plaintiff's medication and their side-effects.

Additionally, the medical records support the ALJ's conclusion that plaintiff was not totally credible.  As discussed by the ALJ in his decision, Dr. Saul opined that, absent substance abuse, plaintiff could work; Dr. Gavazzi, who prepared an RFC assessment, also opined that plaintiff could work.  (R. 20, 21, 782-95.)

The ALJ properly set forth his reasons for finding plaintiff less than totally credible.  Substantial evidence supports the ALJ's conclusion that plaintiff was not totally credible.

**V.**      **CONCLUSION**

After a careful and thorough review of all of the evidence in the record, this court concludes that there is substantial evidence to support the ALJ's determination that plaintiff is not disabled.  The ALJ's decision cannot be set aside where it is supported by substantial evidence, regardless of whether this court would have decided any factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Accordingly, this court makes the following:

R E C O M M E N D A T I O N

AND NOW, this 3rd day of January, 2007, upon consideration of plaintiff's request for review and reversal of defendant's final administrative decision and defendant's motion for summary judgment, it is respectfully recommended that plaintiff's request be **DENIED**, defendant's motion be **GRANTED**, and judgment be entered in favor of defendant.

BY THE COURT:

/s/  Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge